

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00168-CV

**IN THE INTEREST OF Y.M.L.**

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-02836
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: April 8, 2020

AFFIRMED AS MODIFIED

Adriana R. and Jose L.[1] appeal the trial court's order terminating their parental rights to their two-year old daughter, Y.M.L. On appeal, Adriana R. argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in Y.M.L.'s best interest. Jose L. argues on appeal that the evidence is legally and factually insufficient to support the trial court's predicate findings under subsections (D) and (N). As the trial court also terminated his parental rights based on subsection (O) for failing to comply with his court-ordered service plan, Jose L. argues on appeal that he proved section 161.001(d)'s affirmative defense to termination under subsection (O). Finally, he argues the evidence is legally

---

[1] To protect the identity of the minor children, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

and factually insufficient to support the trial court's best-interest finding. Because we hold there is no evidence to support the trial court's finding that Jose L. committed conduct pursuant to subsection (D), we modify the trial court's order to omit that finding. As modified, we affirm.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings by the trial court, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the trial court is the sole judge of the weight and credibility of the evidence. *Id.*

## ADRIANA R.

Adriana R. brings only one issue on appeal: whether the evidence is legally and factually sufficient to support the trial court's best-interest finding. Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section

263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the child, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

In considering the evidence presented at the termination hearing relevant to the above factors, we conclude the evidence is legally and factually sufficient to support the trial court's best-interest finding that termination of Adriana R.'s parental rights is in Y.M.L.'s best interest. Y.M.L. was born in December 2017. David Tran, the caseworker, testified Y.M.L. came into the care of the Department of Family and Protective Services ("the Department") because at the time of her

---

[2] These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[3] These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

birth, she tested "positive for cocaine, opiates, methadone, and heroin." Y.M.L. had "severe jitters, respiratory distress, tension, and uncontrollable crying." As a result of her drug exposure, Y.M.L. was "put on morphine" and was treated in the neonatal intensive care unit ("NICU") for four weeks. Tran testified Adriana R. admitted to him that she had used illegal drugs while pregnant with Y.M.L. According to Tran, Adriana R. was ordered to complete services for domestic violence and substance abuse. She was also ordered to complete a psychological evaluation, engage in therapy sessions, and complete parenting classes. However, Adriana R. failed to complete all of her services.

During the pendency of the case, Adriana R. saw Y.M.L. on two occasions: once in January 2018 and once in October 2018. By failing to regularly visit Y.M.L., Adriana R. did not form a bond with Y.M.L. Although able to reside legally in the United States, Adriana R. moved to Mexico two months after Y.M.L.'s birth. She told Tran she had moved because she "had more support" in Mexico. According to Tran, El Desarrollo Integral de la Familia ("DIF"), a social services organization in Mexico similar to the Department,[4] set up services in Mexico for Adriana R. to complete; however, she did not complete all her services. She attended fourteen out of sixteen parenting classes. She completed a psychological evaluation in Mexico, and the "main concern was the substance abuse and the need for drug treatment." Tran testified that Adriana R. had not shown she is able to provide Y.M.L. with a safe home environment. According to Tran, the Department still had concerns about substance abuse because Adriana R. had "tested positive for methamphetamines" during the pendency of the case and had failed to complete drug treatment. A recent drug test had also shown Adriana R. had been recently using illegal substances. Given

---

[4] Tran testified that because the parents were living in Mexico, he had to contact the Consulate, which would then contact DIF.

Adriana R.'s past history of drug abuse, her recent positive result on a drug test, and her failure to seek treatment, Tran testified Y.M.L. would be in danger if she was returned to her mother.

With the exception of six weeks when Y.M.L. was placed with her maternal grandmother,[5] Y.M.L. has been in the care of the same foster home since she was discharged from the hospital at four weeks old. Tran testified that Y.M.L.'s foster home is the only home Y.M.L. has ever known. Tran testified that Y.M.L. is doing well with her foster parents, is thriving, and all her needs are being met. According to Tran, the permanency goal is adoption by her current placement. Y.M.L.'s foster father testified that when Y.M.L. first came to his home from the hospital, she needed extra care. At the time of the termination hearing, Y.M.L. was fourteen months old. Y.M.L.'s foster father testified she was healthy and had just started walking. He testified that Y.M.L. was bonded to his family and that he and his wife wished to adopt Y.M.L.

Adriana R. testified by telephone that she had been living in Mexico since January 2018 and that she moved because she no longer had a place to live in Texas. Because of a pending Department case with her older child who had been placed with Adriana R.'s mother, Adriana R. testified she was not allowed to live with her mother. According to Adriana R., she moved to Mexico to live with Jose L. and his family because she believed she would have "better opportunities" in Mexico. She testified that she worked in Mexico as an English teacher and that if Y.M.L. was returned to her and Jose L., they would get their own home. She testified that she had finished therapy services and domestic violence classes in Mexico. She testified she was still in drug therapy. Adriana R. admitted that when Y.M.L. was born in December 2017, she used heroin and methadone while she knew she was pregnant. According to Adriana R., in April 2018, she lost her parental rights to her oldest child because she had "a drug problem then." Adriana R.

---

[5] From early April to mid-May 2018, Y.M.L. was place with her maternal grandmother. However, after losing her husband, the grandmother returned Y.M.L. because "she didn't feel up to the task of caring for" Y.M.L.

testified, "Like, I mentioned before, I didn't have any support." Adriana R. admitted, "I was on and off using drugs." She did not remember the last time she had used drugs.

From the above evidence, the trial court could reasonably have formed a firm belief or conviction about the truth of the Department's allegation that termination of Adriana R.'s parental rights is in Y.M.L.'s best interest. We hold the evidence is legally and factually sufficient to support that finding. *See In re J.O.A.*, 283 S.W.3d at 344-45.

## JOSE L.

Jose L.'s parental rights were terminated pursuant to subsections (D), (N), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (N), (O). On appeal, he argues that the evidence is legally and factually insufficient to support the trial court's findings under subsections (D) and (N). He does not challenge the trial court's finding under subsection (O) that he failed to complete his court-ordered service plan. However, he argues that the trial court erred in ordering termination of his parental rights pursuant to subsection (O) because, pursuant to section 161.001(d) of the Family Code, he showed by a preponderance of the evidence that he was unable to comply with the order, he had made a good faith effort to comply, and his failure to comply was not attributable to his fault. *See* TEX. FAM. CODE ANN. § 161.001(d).

### A. Section 161.001(d)'s Affirmative Defense to Termination on Subsection (O) Grounds

Subsection (O) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship" of the Department "for not less than nine months as the result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(O). As noted, Jose L. has not challenged the trial court's finding pursuant to subsection (O) that he failed to comply with

his court-ordered service plan. *See In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A parent's failure to complete one requirement of [his family service plan] supports termination under subsection (O).").

Instead, Jose L. points to the affirmative defense afforded parents under section 161.001(d):

A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order *if a parent proves by a preponderance of the evidence* that:

(1) the parent was unable to comply with specific provisions of the court order; and
(2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

TEX. FAM. CODE ANN. § 161.001(d) (emphasis added). Thus, it was Jose L.'s burden in the trial court to show that he was unable to comply with the provisions of the court-ordered family service plan, that he made a good faith effort to comply with the order, and that his failure to comply with the order was *not attributable to any fault of his*. *See id.*; *see also In re L.L.N.-P.*, No. 04-18-00380-CV, 2018 WL 6069853, at *3 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (explaining that section 161.001(d) is an "affirmative defense" that a parent can assert to prevent termination on subsection (O) grounds).

On appeal, we consider whether there is legally and factually sufficient evidence from which the trial court could have reasonably determined that Jose L. had not proved by a preponderance of the evidence that he was unable to comply with the court-ordered service plan, he made a good faith effort to comply with it, and his failure to comply with it was not attributable to any fault of his. *See In re J.O.A.*, 283 S.W.3d at 344. The evidence presented at the termination hearing shows that Jose L. was ordered to successfully complete a domestic violence course, complete a psychological evaluation and engage in any therapy or counseling recommended, successfully complete a parenting course, and submit to a drug assessment and follow any and all

recommendations made through the assessment. However, weeks after Y.M.L.'s birth, Jose L. was deported to Mexico. At the hearing, Jose L. testified by telephone that he was arrested on December 22, 2017, for possession of drugs, namely Xanax, without a prescription. At first, Jose L. testified that he was deported because he "didn't have any documents." Later, however, he specified that he had been deported because he "had some [Xanax] pills with me because [he] ha[s] migraines." He admitted that he did not have a legal prescription for them.

Although Jose L. was deported to Mexico, there was evidence presented at the hearing that the Department had worked with the Mexican Consulate to allow Jose L. to complete the services required under the service plan in Mexico. Tran, the caseworker, testified that he provided the Mexican Consulate with a copy of the service plans for both Adriana R. and Jose L. Indeed, Jose L. testified that he had met with DIF to go over his service plan and to arrange for him to complete the required services. Tran confirmed he had received some documentation regarding Jose L.'s completion of some services in Mexico. For example, Tran testified the Mexican Consulate and DIF had sent him documentation stating that Jose L. had completed a psychological evaluation. According to Tran, the psychological evaluation recommended therapy and drug treatment for Jose L. "due to his admitted drug use." Tran testified that even though DIF had arranged for Jose L. to attend a substance abuse treatment program, Jose L. had not completed one. According to Tran, Jose L. said that "he did not feel like he needed a substance abuse treatment program."

At the hearing, however, Jose L. gave contradictory testimony about the substance abuse program recommended in his psychological evaluation. When Jose L. was asked whether he had completed "a formal drug treatment program," he first responded, "Yes." Later, however, Jose L. admitted that he had never completed a drug treatment program. Jose L. testified, "After the evaluation, they sen[t] me to a drug treatment, but they told me that I didn't need it." Jose L. also admitted that he had told Tran he did not need drug treatment. When asked if he had provided

proof that he completed drug treatment, Jose L. claimed to have given such proof to DIF. Jose L. also claimed that he had finished parenting classes, individual and couple's therapy, and domestic violence counseling. According to Tran's testimony, however, the Department never received any documentation that Jose L. completed his drug treatment program. Tran testified the Department had received documentation that Jose L. had engaged in other services. For example, Tran received documentation that a month before the termination hearing, Jose L. had started engaging in a domestic violence program. The Department received no documentation, however, that Jose L. had completed his substance abuse program. Thus, other than his own testimony, which the trial court was allowed to not find credible, Jose L. did not show that he completed the required services or was unable to do so.

As noted, under section 161.001(d)'s affirmative defense to termination for failing to comply with a court-ordered service plan on subsection (O) grounds, Jose L. had the burden in the trial court to show that he was *unable to comply* with the provisions of the court-ordered family service plan, that he *made a good faith effort* to comply with the order, and that *his failure to comply with the order was not attributable to any fault of his*. *See* TEX. FAM. CODE ANN. § 161.001(d). We further emphasize that under our standards of review, the "factfinder, not the appellate court, is the sole arbiter of the witnesses' credibility and demeanor." *In re J.O.A.*, 283 S.W.3d at 346. Given the testimony described above, we conclude that there is legally and factually sufficient evidence presented at the termination hearing from which the trial court could reasonably conclude Jose L. had not met his burden of proof under section 161.001(d). Therefore, the trial court did not err in terminating Jose L.'s parental rights on subsection (O) grounds.

### B. Subsection (D) Grounds

Even though only one predicate ground is necessary to terminate parental rights, we must still address Jose L.'s sufficiency issue with regard to subsection (D) "because of the potential

consequences for parental rights to a different child."[6] *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019); *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (permitting termination of parental rights if parent has had his rights terminated with respect to another child based on a finding that the parent's conduct was in violation of subsection (D)). Subsection (D) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child." *Id*. "For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child." *Id*. "Parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *Id*. "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (mem. op.) (quoting *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). "[A] parent need not know for certain that the child is in an endangering environment, awareness of such a potential is sufficient." *Id*. (quoting *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.)). "In evaluating endangerment under subsection D, we consider the child's

---

[6] We do not, however, need to reach Jose L.'s sufficiency issue with respect to subsection (N). *See In re N.G.*, 577 S.W.3d at 234-35.

environment *before* the Department obtained custody of the child." *Id.* at \*3 (emphasis added) (citation omitted).

As discussed previously, at the time of her birth, Y.M.L. was cared for in the NICU for a period of four weeks. She was removed from her parents' care and, after her discharge, was placed in foster care. Although there was evidence at the termination hearing of Adriana R. using illegal drugs while pregnant with Y.M.L. and of the effects suffered by Y.M.L. as a result of her drug exposure, there was no evidence presented at the hearing relating to whether Jose L. knew or should have known about Adriana R. using illegal drugs while pregnant. We therefore hold the evidence is legally insufficient to support the trial court's finding on subsection (D) grounds.

### C. Best-Interest Finding

Finally, Jose L. argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in Y.M.L.'s best interest. He points to his job as a carpenter and his family living situation in Mexico. As noted previously, at the time of the termination hearing, Y.M.L. was fourteen months old. With the exception of six weeks, Y.M.L. has been placed in the same foster home since she was discharged from the hospital at four weeks old. Her foster home is the only home she has ever known, and she has bonded to her foster parents. There was evidence that despite needing extra care as an infant due to her drug exposure, she is now doing well and is thriving in her foster home. The permanency goal is adoption by her current placement, and her foster father testified that he and his wife wished to adopt Y.M.L.

Y.M.L., however, has no bond with Jose L. because he has been deported to Mexico. By his own testimony, Jose L. was deported because he possessed Xanax without a legal prescription. There was evidence Jose L. had admitted to drug use during his psychological evaluation and that his psychological evaluation recommended he complete drug treatment. Jose L., however, did not complete drug treatment because he claimed he was told he did not need it. Further, there was

evidence that Jose L. and Adriana R. are living together in Mexico, and if Jose L. regains his rights to Y.M.L., they plan to continue living together. As noted, there was evidence that Adriana R. used illegal drugs during her pregnancy with Y.M.L., which caused Y.M.L. to have health problems at birth. Although there was no evidence presented at the termination hearing that Jose L. was aware of Adriana R.'s illegal drug use before Y.M.L.'s birth, there was evidence Jose L. knew about her drug use later due to Y.M.L.'s hospitalization in the NICU and these termination proceedings. In addition, there was evidence that Jose L. was living with Adriana R. in Mexico, that Adriana R. had recently failed a drug test, and that Adriana R. had failed to complete drug treatment. Nevertheless, there was testimony that Jose L. and Adriana R. planned to live together with Y.M.L. in their own home in Mexico. From this evidence, the trial court could reasonably have concluded that Jose L. would not be protective of Y.M.L. and would not provide Y.M.L. with a safe and stable home environment. Furthermore, in considering all the evidence, the trial court could also reasonably have concluded that due to Jose L.'s lack of protectiveness and his failure to address his own drug issues, Jose L. could pose an emotional and physical danger to Y.M.L. We therefore hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

Having determined that the evidence is legally and factually sufficient to support the trial court's finding that termination of Adriana R.'s parental rights is in Y.M.L.'s best interest, we affirm the trial court's order terminating her parental rights. Further, with respect to Jose L., because there is legally and factually sufficient evidence to support the trial court's predicate finding under subsection (O) and the trial court's best-interest finding, the trial court did not err in terminating his parental rights. However, because there is no evidence to support the trial court's

subsection (D) finding, we strike that finding from the trial court's order terminating his parental rights. We affirm the order as modified.

Liza A. Rodriguez, Justice